247 So.2d 602 (1971)
Mary Lou Harris SIMS, Plaintiff and Respondent,
v.
J. L. SIMS, Defendant and Relator.
No. 3491.
Court of Appeal of Louisiana, Third Circuit.
April 22, 1971.
Rehearing Denied May 26, 1971.
Howard N. Nugent, Alexandria, for defendant-relator.
McHale & Bufkin, by Lewis D. Bufkin and Robert McHale, Lake Charles, for plaintiff-respondent.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
We granted a writ of certiorari in this case to review a judgment of the district court overruling defendant's exception of lis pendens.
The present suit, entitled "Mary Lou Harris Sims v. J. L. Sims", is for separation *603 from bed and board on the grounds of cruelty, custody of three minor children and alimony pendente lite. It was filed in the Fourteenth Judicial District Court for the Parish of Calcasieu on December 23, 1970, on which date the court issued a temporary order giving Mrs. Sims custody of the children during the pendency of this action. Personal service of citation was made on the defendant, J. L. Sims, in Calcasieu Parish on December 26, 1970.
On January 22, 1971, the defendant, J. L. Sims, filed an exception of lis pendens to which he attached a certified copy of the proceedings in Civil Suit No. 80269 on the docket of the Ninth Judicial District Court for the Parish of Rapides, entitled "J. L. Sims v. Mary Harris Sims." The Rapides Parish suit was filed on December 14, 1970, and is a suit for separation from bed and board on the grounds of cruelty and for custody of the three minor children. On the date the suit was filed the district judge in Rapides Parish issued a temporary order granting Mr. Sims custody of the children during the pendency of the proceedings. The certified copy of the Rapides Parish proceedings does not show any service of process was made on Mrs. Sims in that suit. The sheriff's return shows that he "failed to locate her in the Parish of Calcasieu after a careful and diligent search." However, Mrs. Sims testified at the hearing on the exception of lis pendens that she was served on Friday, January 22, 1971.
The primary issue is whether, for purposes of an exception of lis pendens, a civil action commences when the petition is filed with the court or when citation is served. Mr. Sims contends that his civil action for separation commenced in Rapides Parish with the filing of his petition and that it is still pending and he is therefore entitled to have the suit filed later in Calcasieu Parish dismissed. Mrs. Sims takes the position that since she was not cited in the Rapides Parish suit, no civil action commenced there and hence none was pending when she filed suit in Calcasieu Parish and obtained service.
LSA-C.C.P. Art. 531 sets forth the grounds for the exception of lis pendens as follows:
"When two or more suits are pending in a Louisiana court or courts on the same cause of action, between the same parties in the same capacities, and having the same object, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all."
To support her argument that a suit is not pending until citation is served, Mrs. Sims relies on jurisprudence which developed under Title I, Section 9 of the 1870 Louisiana Code of Practice, which was in effect until 1960. Section 9 provided for the concept of "issue joined." Pertinent here are the following articles:
"357. Cause at issue, when.The cause is at issue when the defendant has answered, either by confessing or denying the facts set forth in the petition, or by pleading such dilatory or peremptory exceptions as he is bound to plead in limine litis, pursuant to the provisions of this Code.
"358. Declinatory exception without answer to merits.When the defendant pleads some declinatory exception, without answering to the merits, there is no issue joined.
"359. Joinder of issueEffect.The joining of issue is in fact the foundation of the suit, as citation is that of the action; it is only after this is done that the suit begins; the parties are then in a situation to discover what evidence is necessary in support of their respective claims."
*604 Construing these articles of the 1870 Code of Practice, several cases held that for purposes of the exception of lis pendens no action is pending until citation is served, D'Asaro v. Sawyer, 87 So.2d 346 (Orl.La. App.1956) writ of certiorari denied; General Electric Contracts Corp. v. Murray, 20 So.2d 19 (1st Cir. 1944); Commercial National Bank in Shreveport v. Henderson, 173 So. 790, 791 (2d Cir. 1937). The rationale of these decisions is that under Code of Practice Article 359, quoted above, service of citation on the defendant is the foundation of the action and the suit does not begin until the defendant is cited.
Our Code of Civil Procedure replaced the 1870 Code of Practice in 1960. In Vol. 1, LSA-C.C.P. at page 753, Concordance Table I shows that the Code of Civil Procedure contains no replacement for articles 357-360 of the Code of Practice dealing with the concept of joinder of issue. The reason for the abandonment of this concept is found in the comment under LSA-C.C. P. Art. 1151 which relates to amendments to petitions and answers. Under the Code of Practice, the rules for amendments depended on the time of joinder of issue. The comment under LSA-C.C.P. Article 1151 reads in pertinent part as follows:
"Probably the most unworkable rules contained in the 1870 Code of Practice are Arts. 419 and 420 relating to the amendment of the petition and answer. The concepts of `joinder of issue' and `altering the substance of the demand' are so nebulous and impractical as to make any rules dependent upon them wholly unworkable. On this subject see McMahon, 43, 44, 95 and 96 (1956 Supp). For these reasons, the above article leaves the decision to the discretion of the trial judge who is in the best position to determine the matter."
Under the Code of Civil Procedure, the rule for determining the time of commencement of a civil action is set forth in Art. 421 which reads as follows:
"A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction. Amicable demand is not a condition precedent to a civil action, unless specifically required by law."
Under Art. 421, it is clear that a civil action commences when a petition is filed in a court of competent jurisdiction. We find no provision in the Code of Civil Procedure which makes the additional requirement that citation be served or issue be joined. Of course, after a civil action commences, it is pending within the meaning of LSA-C.C.P. Art. 531 dealing with lis pendens.
We attach no significance to the fact that LSA-C.C.P. Art. 531 uses the word "Suits" instead of "Civil Actions." As used in Art. 531, a "Suit" is the same as a "Civil Action." LSA-C.C.P. Art. 421, quoted above, defines a "Civil Action" as a demand for the enforcement of a legal right which is commenced by the filing of a pleading. The comment under Art. 421 makes it clear that under the new code the term "Civil Action" means only the instituted action and not the legal right or cause on which the action is based. The purpose of the redactors was to avoid the confusion resulting from Art. 1 of the 1870 Code of Practice which stated that the word "action" included both the "instituted action" and the "right to institute that action." We find no definition of the word "suit" in the Code of Civil Procedure. The 1870 Code of Practice, Art. 96, defined a "suit" as a "demand, made before a competent judge." In this sense, a "suit" is the same as a "civil action" under LSA-C.C.P. Art. 421. We conclude that the redactors of the Code of Civil Procedure intended the word "suits" in Art. 531 to be synonymous with the words "civil action" in Art. 421. Under this construction, it is clear that a suit is pending after it has been commenced by the filing of a pleading in a court of competent jurisdiction.
*605 The history and purpose of the Federal Rule on the same subject is persuasive. Rule 3 reads as follows:
"A civil action is commenced by filing a complaint with the court."
Wright and Miller, Federal Practice & Procedure, Section 1051, makes the following comment:
"The original Advisory Committee was sharply divided in its first attempt to define `commencement of action' in Rule 3. At one time a majority of the Committee favored the so-called `hippocket' method of commencing an action, and the proposed text provided that an action would be commenced by the service of process. An alternative called for the commencement of an action by filing a complaint, but with a further provision that the action should abate unless service was made within 60 days. The Advisory Committee initially supported the first proposal as being less cumbersome and expensive since many civil actions ultimately terminate without any involvement by the court. However, because of objections from the bar, Rule 3 as finally adopted treats the filing of the complaint as determinative; as promulgated, the rule appears to represent the practice preferred by a substantial majority of the country's lawyers. Rule 3 has not been amended since its adoption in 1938."
* * * * * *
"The theory of Rule 3 is that a law suit is a matter of public record and that certainty with regard to fixing the time a suit is instituted is valuable for a number of purposes. For example, establishing the date of commencement is important for determining whether the action has been brought prematurely; whether it is barred by the applicable statute of limitations, or by laches; which of two or more courts in which actions involving the same parties and issues have been instituted should retain the case for disposition absent special considerations; whether after-accruing claims and defenses may be litigated; and whether personal jurisdiction, diversity jurisdiction, and proper venue exist. Rule 3 also is useful for determining whether actions commenced after the effective date of a statute are affected by it and whether a statute is applicable even though the claim for relief being sued upon occurred prior to its enactment. In addition, Rule 3 helps compute the time periods set forth in a number of provisions such as Rules 13(a), 26(a), 33, and 56."
The rationale of Federal Rule 3, as stated by Wright & Miller above, applies with equal logic to the rule adopted by the redactors of our own Code of Civil Procedure in Art. 421. Of course, there is a difference in that Federal Rule 3 does not require that a complaint be filed in a court of competent jurisdiction, whereas, LSA-C.C.P. Art. 421 adds this requirement. One of the reasons for this difference is the desire to retain LSA-R.S. 9:5801, relating to the interruption of prescription by filing of suit, LSA-C.C.P. Art. 421, Comment (b). That statute provides that all prescriptions are interrupted by the commencement of a civil action in a court of competent jurisdiction and proper venue but, if the court does not have jurisdiction and venue, prescription is not interrupted until service of process.
We conclude that the above cited cases relied on by Mrs. Sims, which were decided under 1870 Code of Practice Art. 359, have been legislatively overruled and that under LSA-C.C.P. Art. 421, a civil action commences with the filing of a pleading to a court of competent jurisdiction. Also, that under LSA-C.C.P. Art. 531 a civil action thus commenced is a "suit" and is pending for purposes of the exception of lis pendens. Landry v. Landry, 192 So.2d 237 (4th Cir. 1966) apparently reaches the same conclusion without discussion.
Applying this statutory construction to the present case, it is clear that Mr. Sims' suit was filed in Rapides Parish before *606 Mrs. Sims filed hers in Calcasieu Parish. If the Rapides Parish Court is competent, then the exception of lis pendens must be sustained. LSA-C.C.P. Art. 5251(4) defines a "competent court" as one which has jurisdiction over the subject matter and is the proper venue.
Regarding jurisdiction, LSA-C.C.P. Art. 10 reads in pertinent part as follows:
"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:
* * * * * *
"(7) An action of divorce, or of separation from bed and board, if one or both of the spouses are domiciled in this state and, except as otherwise provided by law, the grounds therefor were committed or occurred in this state, or while the matrimonial domicile was in this state."
In suits for separation from bed and board, a court is not competent unless it also has venue. LSA-C.C.P. Art. 3941 provides:
"An action for an annulment of marriage, for a separation from bed and board, or for a divorce shall be brought in a parish where either party is domiciled, or in the parish of the last matrimonial domicile.
"The venue provided in this article may not be waived, and a judgment rendered in any of these actions by a court of improper venue is an absolute nullity."
At the trial of the exception of lis pendens in Calcasieu Parish, very little evidence was introduced relevant to the question of jurisdiction and venue of the Rapides Parish Court. Apparently the parties did not consider this an issue. Mr. Sims testified that he is in the Air Force and presently lives in base housing on England Air Force Base in Rapides Parish. He owns a home on which he has a homestead exemption in Calcasieu Parish. His wife and children lived there until August 24, 1970, on which date they moved into the home occupied by Mr. Sims on England Air Force Base. On November 18, 1970, Mrs. Sims entered Central Louisiana State Hospital in Rapides Parish, Louisiana. On her discharge from that institution in December of 1970, she apparently did not return to the home at England Air Force Base but, instead, returned to Calcasieu Parish.
Mr. Sims stated that as far as the military records are concerned, his permanent home is still in DeQuincy in Calcasieu Parish, Louisiana. However, he stated that he had recently registered to vote in Rapides Parish. There is no testimony to show the location of his domicile at the time he entered the service and no statement by him that he intends to make Rapides Parish his domicile.
It appears that neither counsel considered the factual issue of domicile important. We cannot determine from the present record whether the Rapides court has jurisdiction and venue. In the interest of justice, we have decided to remand this case to the district court of Calcasieu Parish for the introduction by both parties of additional evidence on the question of whether the Rapides Parish court is one of competent jurisdiction and venue for the suit filed by Mr. Sims there. Following the introduction of such evidence, the district judge will be in a position to decide the exception of lis pendens.
For the reasons assigned, the judgment of the district court, overruling defendant's exception of lis pendens, is reversed and set aside. This case is remanded to the district court of Calcasieu Parish for the introduction of additional evidence by both parties relevant to the jurisdiction and venue of the district court of Rapides Parish *607 over the suit filed there by Mr. Sims. Following the introduction of such evidence, the district court of Calcasieu Parish can decide the exception of lis pendens on the basis of such evidence and in conformance with the views expressed herein. All costs of this writ are assessed against the defendant-relator. Costs of the district court will await a final determination of the case.
Reversed and remanded.