# JOSLYN MANUFACTURING COMPANY

v.

# LIBERTY MUTUAL INSURANCE COMPANY.

### Civ. A. No. 90–2456.

United States District Court,
W.D. Louisiana,
Shreveport Division.

July 8, 1993.

---

**1274**

T. Haller Jackson, III, Tucker Jeter Jackson & Hickman, Shreveport, LA, Jay A. Canel, Stephen D. Davis, Canel Davis & King, Chicago, IL, for plaintiff.

Jack O. Brittain, Sr., Brittain & Sylvester, Natchitoches, LA, Martha J. Koster, Lee Glickenhaus, Mintz Levin Cohn Ferris Glovsky & Popeo, Boston, MA, for defendant.

## MEMORANDUM RULING

STAGG, District Judge.

This is an action for a declaratory judgment and damages arising from a denial of insurance coverage. Joslyn Manufacturing Company ("Joslyn"), a Massachusetts corporation, filed this action against its insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), an Illinois corporation. Joslyn seeks, first, the determination whether Liberty Mutual must defend and indemnify Joslyn against the orders of the Louisiana Department of Environmental Quality ("DEQ") compelling remediation of contamination at the old Lincoln Creosoting site in Bossier City, Louisiana; second, Joslyn wants a determination whether Liberty Mutual must pay any costs incurred by Joslyn in connection with the toxic tort personal injury and property damage claims made by neighbors to the site in a suit entitled *Johnson v. Lincoln Creosote et al.*, which is pending in state court. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

This case was tried to a jury from March 15 to March 18, 1993. The insurance policies at issue contain exclusions for damages which were "expected or intended" by the insured and for damage to the insured's own property. The jury found that Joslyn neither expected nor intended that contamination of the environment would result from its operations at the Bossier City site and that Joslyn incurred costs on account of damage to groundwater. Essentially, what remains to be decided is whether Joslyn is entitled to *any* insurance coverage from Liberty Mutual and, if so, the amount of coverage available.

### A  THE FACTS

Lincoln Creosoting Company treated wood with creosote at the Bossier City, Louisiana, plant between 1935 and 1950. It also leased property from the Louisiana and Arkansas Railroad, in connection with its operation of the plant.

Joslyn purchased the Lincoln Creosoting Plant in Bossier City on July 24, 1950. It operated the plant until 1969. Lincoln assigned the railroad leases to Joslyn in con-

nection with the plant sale. Joslyn entered into leases for additional property from the railroad on January 15, 1955 and on October 12, 1967. Both sets of leases contained an indemnity clause. When Lincoln operated the plant, waste water from the creosote treatment operation flowed into a slough on the east end of the property. When Joslyn began operating the plant in 1950, Joslyn by-passed the slough and installed a 30,000–gallon settlement tank to recover creosote for re-use. Within six months, Joslyn also installed a second 10,000–gallon tank in series after the 30,000–gallon tank for the recovery of creosote. In the mid- to late–50s, Joslyn installed an unlined pond in series after the settling tanks to enable it to use pentachlorophenol ("penta") to treat poles. Penta was also recovered from the ponds for re-use. This recovery system was instituted for economic reasons, but it did not recover all creosote and penta from the waste water. In the 1960's, Joslyn began using a small amount of chromium arsenic copper ("CAC") to treat wood, which was used with a closed-system treatment method. Treatment chemicals were released into the environment in each year of Joslyn's operation. Joslyn sold the plant to Koppers, Inc. on December 1, 1969.

Joslyn has been a Liberty Mutual insured since 1945. From 1962 through 1969, the creosote plant was an insured location under Joslyn's policies with Liberty Mutual. Neither party can locate any of the pre–1962 liability policies between Joslyn and Liberty Mutual.

Between 1962 and 1966, Joslyn's general liability policies with Liberty Mutual contained a special Louisiana endorsement which provided coverage for property damage and personal injury caused by an occurrence. An occurrence was defined as "either an accident or a continuous or repeated exposure to conditions which result during the policy period in injury to persons or real or tangible property which is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence." In the 1967–69 policies, an occurrence was defined as "an accident, including injurious exposure to conditions which results during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint in the insured." None of the policies between 1962 and 1969 contained a pollution exclusion. All of the policies provided insurance coverage for Joslyn's contractual liability to indemnify a lessor for certain specific liability imposed by law on the lessor.

After the sale to Koppers in December 1969, the Bossier City plant was not listed on Joslyn's policy with Liberty Mutual as a location for which coverage was provided.

In 1985, the DEQ began studying the old Lincoln Creosoting Plant site. On October 14, 1985, a report was issued to the DEQ that found the soil contaminated at the site and an extremely high probability of ground-water contamination. On December 6, 1985, the DEQ sent Joslyn an information request concerning the site, and Joslyn responded on February 7, 1986. On August 2, 1986, the DEQ issued a compliance order finding that Joslyn and twelve other parties were subject to liability for clean-up and remedial costs, and ordered the parties to submit an approved clean-up plan for the site. This order was stayed because of requests for a hearing. On December 17, 1987, the DEQ ordered Joslyn and the other potentially responsible parties to investigate and clean up the site. Joslyn's investigation confirmed soil and groundwater contamination at the site.

Joslyn advised Liberty Mutual of the DEQ action on May 19, 1987, and on June 23, 1987. Liberty denied coverage by letter of March 30, 1989.

In March 1987, site neighbors filed a suit against Joslyn and others in the 26th Judicial District Court for Bossier Parish, Louisiana, entitled *Johnson v. Lincoln Creosote Company, Inc.* The complaint alleges that plaintiffs suffered personal injuries and property damage as the result of exposure to chemicals which emanated from the site. Joslyn tendered this suit to Liberty Mutual on or about April 10, 1987. Liberty Mutual tendered a defense to Joslyn for the *Johnson* suit as of February 26, 1992.

## B THE INSURANCE POLICIES

### 1 PRE–1962 POLICIES

The parties agree that Joslyn has been insured by Liberty Mutual since 1945, but that the pre–1962 policies are lost. The parties stipulated that the 1955 and 1956 comprehensive general liability policies with Liberty Mutual provided $1 million in coverage for personal injury, and $1 million for property damage. The 1957–66 policies also provided comprehensive general liability coverage. The 1957–58 policies provided $1 million for personal injury and $1 million for property damage. The 1959 policy had a $3 million single aggregate limit, bodily injury and property damage combined. The 1960–69 policies had a $10 million single aggregate limit for bodily injury and property damage combined.

This is the only evidence concerning the pre–1962 policies which is properly before the court.[1] Joslyn has introduced no evidence of the terms and provisions of the pre–1962 policies. However, even if Joslyn had established the terms and provisions of the pre–1962 policies, coverage would be denied for the reasons stated in the following section.

### 2 COVERAGE: THE ISSUE OF LATE NOTICE

On August 2, 1986, the Department of Environmental Quality ("DEQ") issued a compliance order finding that Joslyn was subject to liability for clean-up and remedial costs, and ordered it to submit an approved clean-up plan for the site. Joslyn advised Liberty Mutual of the DEQ's actions on May 19, 1987 and June 23, 1987.[2] The August 2, 1986 DEQ compliance order was amended on December 17, 1987. Liberty Mutual denied coverage on March 30, 1989 based on a 1985 insurance policy.

The insurance policies at issue provide, in part:

*NOTICE OF CLAIM OR SUIT.* If claim is made or suit is brought against the insured, the insured shall immediately for-

---

1. In relation to the pre–1962 policies, Joslyn has attempted to submit, post-trial, the affidavit of Philip Gehrke, its risk manager from 1947 through 1983. Liberty Mutual has filed a Motion to Strike the Affidavit. Liberty Mutual claims it has been deprived of any opportunity to cross-examine Mr. Gehrke on the statements made in his Affidavit. Liberty Mutual's Motion to Strike the Affidavit of Philip Gehrke is **GRANTED.**
   Additionally, as evidence of the terms and provisions of the pre–1962 policies, Joslyn states in its post-trial Reply Brief that:
   Joslyn has represented it had "caused by accident" coverage for this plant from 1950 through 1956; a special Louisiana endorsement providing "occurrence coverage from 1957 through 1966; and "occurrence coverage from 1967 through 1969. Liberty has never challenged that representation. In fact, Liberty acknowledged this coverage in the Illinois case and represented that there was no practical difference in the scope of coverage provided, *i.e.*, all basically covered property damage that was neither expected nor intended by the insured.
   (footnote omitted). Joslyn also cites exhibits from the "Illinois case" which were not introduced into evidence in the present case. In the absence of a stipulation or any evidence to support Joslyn's statements, these assertions in a post-trial brief are insufficient to establish the terms and provisions of the pre–1962 policies. Liberty Mutual has expressly challenged Joslyn's lack of evidence on this issue.

2. The May 19, 1987 letter from Joslyn to Liberty Mutual states "[w]hile there is nothing for [Liberty Mutual] to do at this time, we are putting you on notice that this may result in a future claim under our prior General Liability Policy," and Joslyn enclosed the August 2, 1986 DEQ compliance order. The court notes that in the June 23, 1987 letter to Liberty Mutual, Joslyn states "[n]otice of a claim relative to this site has previously been forwarded to Liberty Mutual ... [and] [t]he purpose of this letter is to inform you of subsequent events." The letter concludes with the following paragraph:

   Joslyn *reasserts* its claim for insurance coverage for the costs incurred in performing clean-up actions dictated by the Department of Environmental Quality as well as demanding that Liberty Mutual perform its duty to defend Joslyn in these administrative proceedings.
   (emphasis added). In Joslyn's brief dated May 25, 1993, Joslyn now asserts that the August 2, 1986 DEQ order was not a claim or suit which would trigger Liberty Mutual's duty to defend. The issue of whether the August 2, 1986 DEQ order is a "suit" which would trigger Liberty Mutual's duty to defend will be addressed in a subsequent section. The court does conclude, however, that this order is, at minimum, a claim, which triggers Joslyn's contractual obligation to provide Liberty Mutual with immediate notice thereof as an express condition precedent to coverage.

ward to the company every demand, notice, summons or other process received by him or his representative. .

And also that:

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the company.

*See* page LM01211 of the policy, found at Tab B of the appendix to Liberty Mutual's post-trial brief, titled "Requests for Rulings of Law".[3]

Joslyn delayed for over nine months before informing Liberty Mutual of the August 2, 1986 DEQ compliance order. Joslyn's notice to Liberty Mutual was clearly *not* immediate, as required by the insurance contracts.

█ "The rule in Louisiana is that where the requirement of timely notice is *not* an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey Co. v. Zurich Insurance Company,* 971 F.2d 1168, 1173 (5th Cir.1992) (emphasis added), *citing Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570 (5th Cir.1990); *MGIC Indem. Corp. v. Central Bank of Monroe, La.,* 838 F.2d 1382, 1387 (5th Cir.1988); *Barnes v. Lumbermen's Mutual Casualty, Co.,* 308 So.2d 326, 328 (La.App. 1st Cir. 1975). In the present case, timely notice *was* an express condition precedent to coverage.[4] In a suit by the insured, where the terms of the insurance contract are breached by the giving of untimely notice, the insurer is not required to show prejudice in order to avoid liability to the insured. *See Jackson v. Transportation Leasing Company,* 893 F.2d

794, 795 (5th Cir.1990) *citing Auster Oil & Gas, Inc., supra.*

█ Joslyn contends that it gave adequate notice to Liberty because Liberty has made no attempt to show that it was prejudiced in any way by delayed notice. Joslyn's only support for this claim is that this court should not follow the Fifth Circuit's decisions in *MGIC Indem. Corp., supra,* and *Jackson, supra,* since the Fifth Circuit "chose not to follow intermediate state appellate court decisions requiring prejudice." Although this court recognizes the harsh consequences of its decision, it is bound by the Fifth Circuit's interpretation of the intermediate state appellate court cases, which is, when notice is a condition precedent to coverage, an insurer is not required to show prejudice in order to avoid liability to the insured. Joslyn, without excuse, failed to give Liberty Mutual timely notice as required by the insurance policies as an express condition precedent to coverage. Liberty Mutual did not waive this defense, as it properly raised it in its answer.[5] In sum, Liberty Mutual owes no insurance coverage to Joslyn for the claims asserted by the DEQ because Joslyn failed comply with the express terms of the policies.

## 3 LIBERTY MUTUAL'S DUTY TO DEFEND

### A THE DEQ ORDERS

Joslyn alleges that Liberty Mutual has the "duty to defend and indemnify [Joslyn] against the orders of the [DEQ] compelling remediation of contamination at the [site]...." *See* Pretrial Order at page 1.

The insurance contracts at issue only require Liberty Mutual to defend *suits* against its insured. Although the policies provide coverage for claims against the insured, the duty to defend only arises when a suit has been filed. This distinction becomes clear

---

**3.** This language is from a 1962 policy issued to Joslyn. Liberty Mutual has stated that the language used in the 1962 policy is similar to the language in the 1963–1969 policies, unless specifically noted. *See* Liberty Mutual's post-trial brief at p. 6, fn. 2. Joslyn has not contested this statement.

**4.** The aforementioned clauses contained in the Liberty Mutual policies are substantially similar

to the clauses at issue in *Auster Oil & Gas, Inc., supra,* which were held to require timely notice as an express condition precedent to coverage.

**5.** Additionally, Liberty Mutual's denial of coverage on March 30, 1989 was based upon a 1985 policy which contained a "pollution exclusion," not found in the policies involved in the present suit.

after reviewing the insuring agreement contained within the policies. This provision provides that Liberty Mutual has the right and duty to defend a suit against Joslyn, and that it *may* investigate and settle any *claim or suit* against Joslyn.[6]

Thus, the initial issue which must be addressed is whether the August 2, 1986 and/or the amended December 17, 1987 DEQ orders constitute "suits" under the terms of the policies which would thereby invoke Liberty Mutual's duty to defend.[7] The word "suit" is not defined in Liberty Mutual's policies. "Under Louisiana law, an insurance policy is a contract and the words used in a contract 'are to be understood in the common and usual signification, without attending so much to grammatical rules as the general and popular use.'" *F.D.I.C. v. Mijalis,* 800 F.Supp. 397, 400 (W.D.La.1992) *citing Harmon v. Lumbermens Mutual Casualty Company,* 247 La. 263, 170 So.2d 646, 651 (1965).

> Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used.... *NLRB v. Federbush Co.,* 121 F.2d 954, 957 (CA2 1941) (L. Hand, J.)

*King v. St. Vincent's Hosp.,* — U.S. —, —, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (footnote omitted). No Louisiana cases defining the word "suit" have been cited by the parties. The court's own research has found no Louisiana cases interpreting the word "suit" in the context of an insurance contract and the "duty to defend." Louisiana cases defining the word "suit" in other contexts have been unearthed. For example, in *Sims v. Sims,* 247 So.2d 602 (La.App. 3d Cir.1971), the Court examined the meaning of the word "suit" in the context of the Louisiana Code of Civil Procedure. The Court noted that the Louisiana Code of

Civil Procedure did not contain a definition of the word "suit." and stated:

> The 1870 Code of Practice art. 96, defined a "suit" as a "demand, made before a competent judge." In this sense, a "suit" is the same as a "civil action" under LSA–C.C.P. art. 421. We conclude that the redactors of the Code of Civil Procedure intended the word "suits" in art. 531 to be synonymous with the words "civil action" in art. 421. Under this construction, it is clear that a suit is pending after it has been commenced by the filing of a pleading in a court of competent jurisdiction.

*Id.* at 604; *see also Stringfellow v. Nowlin Bros.,* 157 La. 683, 102 So. 869 (La.S.Ct. 1925).

■ Cases from other jurisdictions are relevant because "[t]he law of insurance is the same in Louisiana as in other states." *See Calcasieu–Marine Nat. Bank v. American Employers' Ins. Co.,* 533 F.2d 290, 295 (5th Cir.), *cert. denied* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). In *Simon v. Maryland Cas. Co.,* 353 F.2d 608 (5th Cir. 1965), the question before the Court in Texas was:

> whether the defense coverage provisions and no action clause of a general liability policy are to be read so literally that an assured, who in an adversary proceeding has been adjudicated guilty of negligence by a constitutional court, is denied any coverage because the suit was by, not against him and no affirmative money judgment was rendered against him.

*Id.* at 610. In discussing the phrase "suit against the insured," the Court noted:

> A suit is against an assured when, in a *judicial* proceeding to which he is a party (or deemed by the law to be a party), a definable claim or contention is asserted

---

6. The 1962 policy provides that Liberty Mutual: shall defend any *suit* against the insured alleging such injury, disease or destruction and seeking damages on account thereof, even if such *suit* is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any *claim or suit* as it deems expedient.... (emphasis added).

7. By Minute Entry dated May 25, 1993, this court requested that Joslyn identify which DEQ orders it was claiming that Liberty Mutual was required to defend. Joslyn identified the August 2, 1986 and December 17, 1987 DEQ orders and argues that the August 2, 1986 order is neither a claim nor a suit.

that the assured has a legal liability for damage or injury to person or property. *Id.* at 612 (emphasis added). In *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754 (6th Cir.1992), the Court extensively examined the issue of whether an EPA letter constituted a "suit" that would trigger a duty to defend. The Court noted that the general dictionary definition and the traditional meaning of the word "suit" refer only to those proceedings that take place in a court of law. The Court further noted that the insurance policies at issue specifically distinguished between a suit and a claim in several places. The Court concluded the Liberty Mutual's duty to defend was not triggered by the PRP letter from the EPA. For further discussions and varying analyses, concerning whether a PRP letter constitutes a suit for purposes of the duty to defend, *see also, Aetna Cas. and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 713 (8th Cir.1992) (Under Missouri law, EPA demand letters requiring clean up of various sites do not constitute suits for damages which trigger duty to defend.); *Aetna Cas. & Sur. Co., Inc. v. Pintlar Corp.*, 948 F.2d 1507 (9th Cir.1991) (Under Idaho law, EPA's administrative claims trigger the insurer's duty to defend.); *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731 (1st Cir.1990) (Under New York law, agencies' letters were not sufficiently coercive to constitute a suit, however, the word suit does not necessarily require a lawsuit to be filed before the duty to defend arises.); *Avondale Industries, Inc. v. Travelers Indem. Co.*, 887 F.2d 1200 (2d Cir.1989), *cert. denied* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990) (Interpreting New York contract law, the Court concluded that a letter from the Louisiana Department of Environmental Quality constituted a suit, as it was a formal demand for immediate action to clean up a hazardous waste site.) and *Maryland Cas. Co. v. ARMCO, Inc.*, 822 F.2d 1348 (4th Cir.1987) (Under Maryland law, EPA claim seeking compliance with regulatory directives, including reimbursement of response costs does not constitute a claim for "damages" and does not invoke the duty to defend.).

The DEQ orders at issue are entitled "In the Matter of: Lincoln Creosoting Facilities, Bossier City, Louisiana Proceedings Under the Louisiana Environmental Quality Act, La.Rev.Stat. 30:1051 *et seq.* Compliance Order." The orders state that they are issued by the Secretary of the Department of Environmental Quality of the State of Louisiana under the authority granted in the LEQA and the orders notify respondents (not "defendants") that failure to reply to the orders would subject respondents "to *possible* enforcement proceedings under Section 1973 of the Act [LEQA] which could result in the assessment of civil penalties in an amount not to exceed $50,000 for each day of continued non-compliance." (emphasis added). La.Rev.Stat. 30:1073 has been re-designated as 30:2025 and sets forth the permissible enforcement proceedings under the LEQA. La.Rev.Stat. 30:2025 specifically grants the DEQ the authority to file a civil action, *i.e.*, the LEQA itself differentiates a compliance order from a civil action and considers a compliance order something less than a civil action.

■ This court concludes that the August 2 and the amended December 17 compliance orders issued by the DEQ do not rise to the level of a suit which would invoke Liberty Mutual's duty to defend. The court bases this conclusion on several factors: (1) the compliance order itself specifically provides that if respondent refuses to comply with the order, the respondent could be subject to possible enforcement procedures under § 1073 [now: § 2025] of the LEQA, *i.e.*, a civil action or civil penalties; (2) the general and traditional definition of a suit refers to a formal proceeding in a court of law; and most importantly, (3) the insurance policies specifically differentiate between the words claim and suit for purposes of the duty to defend. An insurance policy is a contract, and this court finds that Liberty Mutual only contracted to defend Joslyn against suits, not against compliance orders of this nature.

## B THE JOHNSON TOXIC TORT SUIT

On February 26, 1992, Liberty Mutual agreed to defend Joslyn in the *Johnson* suit. At trial, Joslyn's in-house attorney, Carl Grabinski, testified that Liberty Mutual had still

not reimbursed Joslyn's defense costs in that case. After the jury trial in this matter, the parties were ordered to submit a list of issues which remained to be decided by the court. A briefing schedule was then established. The issue of Liberty Mutual's duty to defend the *Johnson* suit was not identified as an issue which remained to be decided.

By a minute entry dated April 26, 1993, the parties were asked to inform the court whether the issue of payment of defense costs in the *Johnson* suit remained to be decided. In a letter to this court dated May 6, 1993, Liberty Mutual states that it agreed to defend Joslyn in the *Johnson* suit and that Joslyn acknowledges that Liberty Mutual has honored its obligation. Thus, the court considers this issue MOOT and attaches Liberty Mutual's letter as evidence thereof. *See* attached Appendix "A."

**IT IS ORDERED** that defendant shall submit a judgment consistent with the terms of this memorandum ruling within ten (10) days of its filing.

**THUS DONE AND SIGNED.**

APPENDIX A

Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111

701 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Lee H. Glickenhaus

May 6, 1993

Honorable Judge Tom Stagg
Federal District Court
Western District of Louisiana
500 Fannin Street
Room 106
Shreveport, LA 71101

Re: Joslyn Manufacturing v. Liberty
Mutual Insurance

Company Number CV90-2456

Dear Judge Stagg:

This letter is Liberty Mutual's brief response to Joslyn's brief pursuant to the minute order of April 26, 1993 concerning Joslyn's claim for coverage with regard to the *Johnson* Complaint. Liberty Mutual has agreed to defend to Joslyn from the *Johnson* case. Joslyn acknowledges in its papers that Liberty Mutual has honored this obligation. There is no suggestion that Liberty Mutual will refuse to honor this obligation in the future. Accordingly, this issue is moot and there is no need for the Court to issue a ruling on this matter at all.

Respectfully submitted

/s/Lee H. Glickenhaus
Lee H. Glickenhaus

cc: Steve Davis, Esq.
Jack O. Brittain, Esq.
T. Haller Jackson, III, Esq.
Martha Koster, Esq.

LHG/bw:278228.1