JOSLYN MANUFACTURING
COMPANY, Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, Defendant.

No. 95 C 3717.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 26, 1998.

Stephen D. Davis, Canel, Davis & King, Chicago, IL, for Plaintiff.

Terrence E. Kiwala, Rooks, Pitts and Poust, Chicago, IL, Martha Koster, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The defendant, Liberty Mutual Insurance Company ("Liberty"), moves this court to reconsider its August 16, 1996 Memorandum Opinion and Order ("August 16 Order"). The plaintiff, Joslyn Manufacturing Company ("Joslyn"), in turn, moves for summary judgment as to Counts IV, V, and VI of the First Amended Complaint. Joslyn also seeks to amend the First Amended Complaint to add four additional sites. For the reasons set forth below, Liberty's motion for reconsideration is denied, Joslyn's motion for summary judgment is granted in part and denied in part, and Joslyn's motion to file a Second Amended Complaint is denied.

### Background

In the August 16 Order, I held that Liberty, by delaying to reserve its rights, waived its coverage defenses with regard to the claims in *Johnson, et al. v. Lincoln Creosote Co., et al.*, Number 70481, 26th Judicial District Court, Bossier Parish, Louisiana ("Johnson Lawsuit") and to the Environmental Protection Agency ("EPA") Claim. Liberty now moves for reconsideration of that Order. Since there are no new facts, the facts of the August 16 Order are incorporated herein.

Joslyn, in turn, moves for summary judgment as to Counts IV, V, and VI of the First Amended Complaint, relying primarily on the August 16 Order and its reasoning. Joslyn has incurred over $3.6 million in cleanup costs at the Bossier City, Louisiana Site ("Bossier Site") under the EPA Claim and over $3.5 million at the Panama, Oklahoma Site ("Panama Site"). Joslyn also expects to incur future defense and cleanup costs for the EPA Claim (Count IV), the Johnson Lawsuit (Count V), and the Panama Site (Count VI).

Finally, Joslyn seeks to amend its complaint. Joslyn filed its original complaint on June 26, 1995 seeking environmental coverage for six sites ("Original Complaint"). On January 4, 1996, Joslyn amended its Original Complaint by adding a new count involving an additional claim arising from one of the six sites ("First Amended Complaint"). Joslyn now moves to file a Second Amended Complaint, adding four new sites to the First Amended Complaint: Sandpoint, Idaho ("Sandpoint Site"); Tama, Iowa ("Tama Site"); Chehalis, Washington ("Chehalis Site"); and Rosen Superfund Site, Cortland, New York ("Rosen Site"). All of these sites were formerly owned and operated by Joslyn.

On July 21, 1986, the Sandpoint Site owner, B.J. Carney Industries ("Carney"), demanded contribution from Joslyn for necessary response costs. Carney's lawyers sent Joslyn a draft complaint on June 17, 1987 which they proposed to "file within the next week or so." Second Am. Compl. ¶ 78. The complaint was never filed.

On April 24, 1990, Joslyn received a letter from the owner of the Tama Site, Ronald Kenyon Construction Company and Kenyon Enterprises, Inc. ("Kenyon"). The letter stated that in an environmental audit by a prospective purchaser, contamination was discovered. Kenyon wanted to meet with Joslyn "to exchange information, discuss various strategies for proceeding and attempt to reach an agreement on a specific strategy for proceeding in this matter." Second Am. Compl. ¶ 88.

On August 30, 1984, Joslyn received a letter from the then owner of the Chehalis Site,

American Crossarm & Conduit Company ("American Crossarm"), stating that the Washington Department of Ecology had ordered American Crossarm to cease certain operations in 1983 and to take steps to alleviate degradation of the surrounding environment resulting from its operations. American Crossarm stated that "we believe that [Joslyn] must share in the financial responsibility of cleaning up the American Crossarm site." Second Am. Compl. ¶ 97.

On October 1, 1993, Cooper Industries ("Cooper") wrote Joslyn stating that it was involved at the Rosen Site because of EPA allegations that it had disposed of hazardous substances at that site. The letter sought "indemnification for the claims assessed against [Cooper] relative to the Rosen site" and stated that Cooper "may assert a claim for contribution pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ...." Second Am. Compl. ¶ 108.

All of the above letters were forwarded to Liberty. Liberty denied coverage of the Sandpoint, Tama, and Chehalis Sites in 1991. Liberty did not offer a defense, request further information, or assert coverage defenses on the Rosen Site.

Nothing further was received from the four site owners. Joslyn did not bring any actions against Liberty regarding these sites until now.

### Motion to Reconsider

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir.1984)).

■ Liberty first contends that the court erred in its interpretation of Louisiana law on waiver. Liberty argues that since it did not assume the defense of Joslyn in the Johnson Lawsuit and the EPA Claim until after it had reserved its rights, waiver is inapplicable. This argument was addressed in the August 16 Order. Specifically, I found

that "[u]nder Louisiana law, the duty of an insurer to reserve its rights can arise once the insurer is notified of an occurrence even if the insurer does not yet know of a suit." August 16 Order at 14. The Fifth Circuit in *Peavey* clearly supports this proposition.

> For [insurer's] claim of nonwaiver to be plausible, [insurer] should have issued its reservation of rights letter within a reasonable time after the date in January 1990 on which it was informed of *the occurrence.*

*Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1175 (5th Cir.1992). Since Liberty has not presented any new law to the contrary, the court did not err in its legal interpretation. Liberty had to reserve its rights within a "reasonable time" after the notice of occurrence.

■ Liberty's second argument is that the decision in *Joslyn Manufacturing Company v. Liberty Mutual Insurance Company*, 836 F.Supp. 1273 (W.D.La.1993) is *res judicata* as to the issue of whether or not Liberty has waived its defenses in the Johnson Lawsuit and the EPA Claim. This argument was never raised in Liberty's response to Joslyn's waiver claim.

Raising an argument for the first time in a motion for reconsideration is "too little, too late." *Laserage Technology Corp. v. Laserage Laboratories, Inc.*, 972 F.2d 799, 804 (7th Cir.1992). Liberty had ample opportunity to present this argument prior to the court's August 16 Order, and failed to do so. Thus, Liberty's *res judicata* argument is waived.

### Motion for Summary Judgment

Joslyn moves for summary judgment as to Counts IV, V, and VI of the First Amended Complaint. Joslyn seeks judgment for past costs under Counts IV and VI and for a declaration that Liberty must defend and indemnify Joslyn in the future under Counts IV, V, and VI.

### A. Counts IV and V

■ In the August 16 Order, I held that Liberty waived its coverage defenses. That decision dealt specifically with Liberty's late notice of occurrence defense, but it was broad enough to include any other coverage

defense that freed Liberty of its obligation to defend and indemnify Joslyn. Thus, Liberty must defend and/or indemnify Joslyn against the Johnson Lawsuit and the EPA Claim.

Liberty's duty to defend and indemnify is limited to the terms and conditions of the insurance policies. Joslyn is only entitled to coverage as provided in the policies. The August 16 Order held only that Liberty was obligated to defend and indemnify Joslyn. It did not hold that Liberty waived its right to dispute the extent of Joslyn's coverage under the policies.

Therefore, Joslyn's motion for summary judgment as to Counts IV and V is granted to the extent that it seeks a declaration that Liberty must defend and/or indemnify Joslyn against the EPA Claim and the Johnson Lawsuit. However, the defense and indemnification are limited to the terms and conditions of the insurance policies.

Joslyn's motion for summary judgment as to the past costs associated with the EPA Claim under Count IV is denied. Joslyn's motion is based on the premise that Liberty waived all of its rights to dispute the terms and conditions of coverage pursuant to the August 16 Order. However, as stated above, the August 16 Order only held that Liberty waived its defenses as to its duty to defend and indemnify Joslyn. Therefore, whether or not Joslyn is entitled to past costs depends on the terms and conditions of the insurance policies. Joslyn did not present sufficient evidence in its summary judgment motion to prove that there was no dispute as to any material fact regarding the terms and conditions of the policies.

## B. Count VI

Joslyn argues that it is entitled to summary judgment under either the theory of estoppel or waiver. Applying Illinois law,[1] Liberty is not estopped from asserting coverage defenses nor has it waived its coverage defenses. Joslyn's motion for summary judgment therefore is denied.

**1.** Both parties agree that Illinois law is applica-

### 1. Estoppel

■ On July 27, 1994, Joslyn received a letter from the EPA regarding the Panama Site notifying Joslyn that it was a potential responsible party ("PRP Letter"). Joslyn forwarded the PRP Letter to Liberty and demanded defense and indemnity. Liberty did not either offer or deny a defense, but rather sought further information. On June 26, 1995, Joslyn brought suit against Liberty, seeking coverage for the Panama Site. Liberty subsequently denied a defense pending the outcome of the above litigation.

Joslyn argues that the EPA's PRP Letter triggered Liberty's duty to defend and its failure to do so estops it from asserting any coverage defenses. Joslyn relies on the Seventh Circuit's decision in *Joslyn Manufacturing Company v. Liberty Mutual Insurance Company*, 23 F.3d 1212 (7th Cir.1994), in which the court held that "[u]nder Illinois law Liberty was required to defend its insured because the [Illinois EPA Record of Decision] was at least potentially within policy coverage" and that failure to do so equitably estops "the insurer from disputing questions of coverage because it should have obtained a declaratory judgment or defended the insured under a reservation of rights." 23 F.3d at 1213–14; *see also United States Fidelity & Guar. Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 389, 535 N.E.2d 1071, 1079, 129 Ill.Dec. 306, 314 (1st Dist.1989) (holding that a PRP letter triggers an insurer's duty to defend).

■ Subsequent to the Seventh Circuit's decision, the Illinois Supreme Court has definitively ruled that a PRP Letter is not a "suit" requiring an insurer to defend. *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill.2d 520, 533, 655 N.E.2d 842, 847–48, 211 Ill.Dec. 459, 464–65 (1995). This decision applies retroactively. *Fruit of the Loom, Inc. v. Travelers Indem. Co.*, 284 Ill. App.3d 485, 496, 672 N.E.2d 278, 286, 219 Ill.Dec. 770, 778 (1st Dist.1996); *Forest Preserve Dist. of DuPage County v. Pacific Indem. Co.*, 279 Ill.App.3d 728, 734, 665 N.E.2d 305, 310, 216 Ill.Dec. 245, 250 (1st Dist.1996). Thus, since Liberty was not required to de-

ble.

fend Joslyn, it cannot be estopped from asserting any coverage defenses.

### 2. Waiver

█ Under Illinois law, "[w]hen an insurer wishes to assert its nonliability under the policy, it must notify the insured without delay." *Krutsinger v. Illinois Cas. Co.*, 10 Ill.2d 518, 526, 141 N.E.2d 16, 21 (1957). On July 27, 1994, Joslyn received a PRP Letter from the U.S. Environmental Protection Agency notifying it of potential responsibility for the cleanup of the Panama Site. Joslyn forwarded the letter to Liberty that same day. The very next day, Liberty responded that

> [w]e presently lack sufficient information to comment specifically on how your client's policies may relate to the particular coverage issues present in environmental claims of this nature. Accordingly, we *reserve all of our rights* under the applicable law and under all policies of insurance issued to Joslyn Corporation by Liberty Mutual and our continued investigation into this matter is not to be construed as a waiver of these rights.

Joslyn's 12M Statement in Supp. of its Mot. for Summ. J. on Count VI of the First Am. Compl. (Panama, Oklahoma) ¶ 7 (emphasis added). Thus, Liberty did reserve its rights without delay, and cannot be held to have waived its coverage defenses vis a vis the Panama Site.

### Motion to Amend

█ Under Federal Rules of Civil Procedure 15(a), a party may amend its complaint, after a response has been served, only with leave of the Court. Leave to amend "shall be freely given when justice so requires." *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1303 (7th Cir.1993) (quoting Rule 15(a)). However, if amendment will cause undue delay or undue prejudice to the opposing party, the interests of justice are not served and amendment should be denied. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also*

*Fujisawa Pharmaceutical Co. v. Kapoor*, 165 F.R.D. 79, 80–81 (N.D.Ill.1996) (denying amendment where plaintiff's unexplained delay in seeking amendment would require new discovery and delay the trial).

█ When Joslyn filed its Original Complaint in 1995, it knew all the facts necessary to assert claims as to the four sites. Joslyn even had the opportunity to amend its complaint in 1996, and still did not include those four sites at that time. Nothing has changed from the time Joslyn filed its Original Complaint or its First Amended Complaint.

Joslyn offers two reasons for waiting over two years to file the above four claims: (1) that it was unclear whether there was a justiciable controversy at the sites and (2) that it "had plenty on its plate in litigating coverage at the sites where it was incurring substantial costs." Neither reason excuses Joslyn for its delay in seeking amendment. The law on the justiciability question has not changed in the intervening period.[2] Furthermore, Joslyn's plate is still full, litigating claims where it is incurring substantial costs.

The main reason Joslyn seeks to amend its First Amended Complaint is to include the four new sites under the umbrella of this court's August 16 Order. Joslyn contends that Liberty has waived or is estopped from raising coverage defenses at these sites, and thus, Joslyn's claims for coverage over those sites can be easily determined. According to Joslyn, amendment would not cause undue delay or prejudice Liberty.

I disagree that the issue of coverage could easily be determined without further discovery. The August 16 Order only determined that Liberty had waived its coverage defenses under Louisiana law vis a vis the Bossier Site. Liberty received a notice of occurrence, it had ample opportunity to investigate after that notice, and by no later than August, 1988, it should have reserved its rights. To make that same determination for four other sites would require investigation into when Liberty was given notice of occurrence, how long it needed to investigate the occurrence,

---

**2.** The justiciability question focuses on whether or not Joslyn must be sued before it can seek a declaratory judgment as to coverage.

and whether after the investigation, it reserved its rights within a reasonable time.

Furthermore, even if I did find waiver, that issue is not dispositive of the claims. As noted in the discussion on summary judgment, waiver of the right to claim non-coverage does not waive the right to dispute terms and conditions of coverage.

Finally, Joslyn's proposed amendments add four sites where it is questionable whether or not Joslyn will ever be called to account for its prior activities. Joslyn has not been sued by any party for environmental cleanup at any of the four sites. Kenyon never demanded contribution for any cleanup costs at the Tama Site. The owners of the three other sites did demand contribution from Joslyn, but it has been over thirteen years since the American Crossarm demand, eleven years since the Carney demand, and four years since the Cooper demand. Therefore, requiring Liberty to defend against these claims would cause undue delay and would be unduly prejudicial. It would necessitate needless discovery and prolong this litigation for claims that may never materialize.

### Conclusion

For the foregoing reasons, Liberty's motion for reconsideration of the court's August 16 Order is denied. Joslyn's motion for summary judgment as to Counts IV and V is denied in part and granted in part. Joslyn's motion for summary judgment as to Count VI is denied. Joslyn's motion to amend its First Amended Complaint to add four new sites is denied.