**Laurie AMBRE, Plaintiff,**

v.

**JOE MADDEN FORD, Ford Motor Company, and Bank One, LaGrange, Defendants.**

**No. 94 C 4389.**

United States District Court, N.D. Illinois, Eastern Division.

April 4, 1995.

---

**1188**

Richard Lawrence Canavan, Norman H. Lehrer, Lehrer, Flaherty & Canavan, William B. Thompson, Wheaton, IL, for plaintiff.

Richard M. Karr, Jonathan Paul Geen, Hardt & Stern, PC, Chicago, IL, for Joe Madden Ford.

Beatriz Maria Olivera, Vigil, Berkley, Schulz and Gordon, P.C., Skokie, IL, for Ford Motor Co.

Peter Alan McElvain, Banc One Illinois Corporation, Chicago, IL, for Bank One La-Grange.

### *MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

On September 26, 1992, plaintiff Laurie Ambre ("Ambre") purchased from defendant Joe Madden Ford ("Madden") a "new" 1992 Ford Explorer manufactured by defendant Ford Motor Company ("Ford"). Ambre alleges that shortly after she purchased the Explorer, it manifested multiple defects which affected its safety, reliability and value. (1A .Compl., Count IV, at ¶¶ 5, 7). In Count IV of her amended complaint, Ambre advances a common law fraud claim against Madden and Ford. More specifically, she alleges that both defendants made the following false oral and/or written representations: that the vehicle would be covered under the extended warranty for thirty-six months and 60,000 miles from the date of purchase (*i.e.*, September 26, 1992) when, in fact, the war-

ranty coverage lasted only for approximately twenty-six months and 53,000 miles (*id.* at ¶ 13); that the vehicle was "new" when it had over 7,000 miles on the date of purchase (*id.* at ¶ 14); and that she was receiving a fair price when defendants allegedly charged her more than the manufacturer's suggested retail price for a new 1992 Explorer (*id.* at ¶ 15). Ambre further alleges that defendants made these misrepresentations with the intent that she would rely upon them and that she did in fact rely upon them to her detriment. (*Id.* at ¶¶ 17–19). Madden has moved to dismiss count IV pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.

In response to defendant's motion to dismiss, plaintiff sought and received leave of court to file an amended complaint to replead certain allegations in Count IV and to correct problems with the complaint's exhibits.[1] In light of the amendment to the complaint and the parties submission of materials outside of the pleadings, including affidavits and statements of contested and uncontested facts, this court will address Madden's pending motion as a motion for summary judgment rather than a motion to dismiss.

Except where specifically noted, the following are the uncontested facts.

On September 26, 1992, Ambre purchased a 1992 Ford Explorer bearing vehicle identification number 1FMDU34X4NUB100343 from Madden, an automobile dealership primarily engaged in the sale and servicing of new and used Ford vehicles. (12(M), at ¶¶ 1, 3). Charles Thompson was one of the Madden salesmen involved in the sale of the Explorer to Ambre. (Thompson Aff.). As part of the sale, Ambre traded in her 1990 Mercury Cougar. (12(M), at ¶ 4). Ambre owed a balance of $7,454.67 on her trade-in. (Compl. Exh. A).

 The Explorer was a demonstrator and had 7,050 miles on it.[2] (12(M), at ¶ 7; Thompson Aff., at ¶ 6). Thompson orally advised Ambre of these facts. (*Id.*). Prior to Ambre's purchase, the Explorer had not been titled to any individual or entity other than Joe Madden Ford, Inc. (12(M), at ¶ 12). According to Ambre's affidavit, the sales people told her that the Explorer was a new vehicle. (Ambre Aff., at ¶ 3). Madden designated the vehicle as "new" on both the Buyer's Order and the Retail Sales Install-

1. Judge Charles R. Norgle, Sr., granted plaintiff's request to file an amended complaint on October 18, 1994. By order of the Executive Committee dated November 8, 1994, this case was transferred to this court following my appointment to the bench.

2. This fact, like many others, is deemed admitted for the purposes of this motion due to Ambre's improper and incomplete response to Madden's Local Rule 12(M) Statement of Uncontested Facts. Local Rule 12(N)(3) requires each party opposing a Rule 56 motion for summary judgment to serve and file:

> (3) a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, *specific references to the affidavits, parts of the record, and other supporting material relied upon,* ...

(emphasis added). It is insufficient to respond to a movant's 12(M) statement by stating, as Ambre did here, that a particular fact is "disputed" without also citing to an affidavit or other supporting material to establish the basis of the dispute. By stating only that a fact was "disputed," Ambre has essentially elected to rely upon her pleadings to establish the basis of the assert-

ed factual disputes. It is well established, however, that a party opposing summary judgment may not rely on the allegations of her pleadings but must instead present specific facts establishing that a genuine issue of material fact exists for trial. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994) (citing *Fed.R.Civ. Proc. 56(e)).* By failing to submit proper responses to Madden's 12(M) statement, Ambre has conceded to Madden's version of the facts. *See Local Rule 12(N)(3)(b)* ("[a]ll material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party"); *Waldridge,* 24 F.3d at 922 ("[w]e have repeatedly upheld the strict enforcement of these [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rules and thereby conceded the movant's version of the facts") (citations omitted).

Finally, Ambre only responded to select paragraphs of Madden's 12(M) statement. She thus admitted to the facts contained in each of the paragraphs to which she did not submit a response. *See Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir.1994) (non-movant's failure to contest movant's statement of uncontested facts constituted a binding admission of those facts).

ment Agreement. (Compl., Exh. A; Bank One Mot. Turnover Order, Exh. A).

Ambre maintains that the window sticker was not shown to her before she purchased the Explorer.[3] (Ambre Aff., at ¶ 2). Nonetheless, she negotiated a "bottom line" purchase price with Thompson which represented the amount she would pay for the Explorer after receiving a credit for her trade-in. (12(M), at ¶ 8). After negotiating the "bottom line" price, Thompson completed the Buyer's Order form by coming up with calculations that reached the agreed upon sales price. (Id. at ¶ 9). Thompson began his price calculations with the manufacturer's top-line suggested retail price ("MSRP") without discount, which was $27,164.00 as reflected on the manufacturer's invoice. (Thompson Aff., at ¶ 3). He then subtracted from the MSRP a "used car allowance" of $10,339.00, which represented the actual value of Ambre's trade-in plus an additional discount of $4,539.00. (Id.). These calculations left a balance pre-tax and fees balance of $16,864.00. (Compl., Exh. A). The Buyer's Order, which Ambre signed, listed the odometer at 7050 miles. (Compl.Exh. A; 12(M), at ¶ 5). It also contained the following handwritten statement: "Sold w/ [with] Remainder of Factory Warranty. In Service 11/9/91." (Id.). Ambre also signed an Odometer Disclosure Statement which revealed that the odometer read 7050 miles. (12(M), at ¶ 6).

Finally, Ambre bought an Extended Service Plan ("ESP") for 3 years/60,000 miles coverage. In her affidavit, she attests that Madden's sales people did not tell her that the effective date of the ESP was back-dated to the date Madden originally put the vehicle into service as a demonstrator (i.e., November 9, 1991). (Ambre Aff., at ¶ 4). Ambre believed, "based on what she was told," that she had purchased 60,000 miles of warranty coverage that began on September 26, 1992, the date she purchased the Explorer. (Id.). She instead received a 26 month/53,000 mile warranty. (12(M), at ¶ 14). Ambre attached to her complaint of a portion of a written document describing the ESP; it stated in pertinent part:

CHOOSE YOUR COVERAGE LENGTH Ford ESP PremiumCARE is available in several time and mileage options. Coverage begins with the original in service date and zero mileage. Repairs made on or before the enrollment date are not eligible for reimbursement. Choose the plan best suited for your driving needs: . . .

(Compl., Exh. B–3). She also attached her ESP identification card, which lists as 11–09–94 as the "date plan expires" and 60000 as the "mileage plan expires." (Id., Exh. B–5). Ambre has not established when she first received these documents and whether she reviewed them before the purchasing the ESP.

## I.

### Summary Judgment Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Kincaid v. Vail, 969 F.2d 594, 600 (7th Cir.1992). The movant has the burden of establishing that there is

---

3. Whether the "Moroney" window sticker was on the window is presently shrouded in mystery. According to Thompson, "the Moroney sticker with the manufacturer's suggested retail price was on the subject vehicle at all times that Ms. Ambre looked at the vehicle prior to purchasing it." (Thompson Aff., at ¶ 5). Paragraph 13 of Madden's 12(M) statement asserts that the sticker "was at all times on the window of the subject vehicle;" however, this assertion is not supported by the record. Thompson's affidavit establishes only that the sticker was on the Explorer; it does not expressly state that it was on the window. Ambre, in turn, claims that she found the window sticker "folded in the glove box" at some presently undefined point after she purchased the Explorer. (Ambre Aff., at ¶ 3). Her affidavit is equally imprecise. She did not state that the sticker was not on the window; rather, she attested only that the sticker was not *shown* to her. (Id.).

no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the non-moving party must set forth specific facts which demonstrate the existence of a genuine issue for trial. *Fed.R.Civ.P. 56(e); Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of .an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## II.

### A. Extended Service Plan Claim

■ Due to the factually underdeveloped record, Madden's motion for summary judgment is denied without prejudice with respect to Ambre's first claim that Madden fraudulently misrepresented the coverage provided by the extended service plan.

Ambre's failure to plead her allegations of fraud with particularity as required by Federal Rule of Civil Procedure 9(b) is responsible for a substantial portion of the underdeveloped record. Rule 9(b) states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule's reference to "circumstances" requires "the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Serv., Inc.*, 20 F.3d 771, 777 (7th Cir.1994) (citations omitted). Neither plaintiff's complaint nor her affidavit submitted in opposition to the motion for summary judgment identifies the circumstances of her claim with any degree of particularity. To the contrary, the format and substance of Ambre's affidavit raise troubling issues about the factual predicate of Ambre's fraud claim.[4]

The existing record is also factually deficient because neither party submitted a copy of the Extended Service Plan contract or otherwise detailed the terms and conditions of the ESP agreement. The only documents presently contained in the record that concern the terms and conditions of the ESP purchased by Ambre for her Explorer are Complaint Exhibits B–3 and B–5 and Exhibit D to Plaintiff's Response Memorandum. As previously noted, Exhibit B–3 is only one page of a multiple page document that appears to be a brochure describing the ESP rather than a formal agreement setting forth the provisions of the plan. *Contrast* Compl. Exh. B–4 (which sets forth the terms and conditions of the ESP for Ambre's 1990 Mercury Cougar, which Ambre's counsel inadvertently attached to her complaint in error).

---

4. The form of Ambre's affidavit is troublesome because the statements to which Ambre attested are typed in two different typefaces. Specifically, the second sentence of paragraph no. 4 is in a different typeface than the remainder of the affidavit; the sentence states, "Based on what I was told by Madden Ford, I believed that I had purchased 60,000 miles of warranty coverage, beginning the day I purchased the vehicle."

It appears to the court that this second sentence was added to the affidavit after it had been typed in the original typeface. It is not presently known by the court when the second sentence was added or by whom. It is possible that Ms. Ambre added the sentence herself before executing the affidavit. However, Ms. Ambre did not initial the second sentence or otherwise signify that she read and approved the added text. Moreover, the affidavit was apparently sent by Ms. Ambre to her counsel via facsimile following her execution of same. All of the affidavit's text that appears in the original typeface plus Ms. Ambre and the notary public's signatures were slightly distorted by the facsimile process. However, the typeface of the second sentence of paragraph 4 of the affidavit does not have this distortion.

Mindful of counsel's ethical duties and Federal Rule of Civil Procedure 11, the court requests that plaintiff's counsel promptly present the original affidavit for inspection and to account for the problems with the affidavit identified in the preceding paragraph.

Similarly, exhibit B–5 is an identification card establishing Ambre's enrollment in the ESP but does not set forth the terms and conditions of the plan. Finally, Exhibit D to the response memorandum is the "Application for Contract for Ford and Lincoln Mercury New and Used Vehicles and Non-ford Used Vehicles Only." The Application listed the "In–Service Date (The date the vehicle is first placed into service by the dealer. This is not necessarily the date of ESP purchase.)" as 11/09/91 and the "expiration date" of the plan as 11/09/94. It further identified the "current mileage" as 7050 and the "expiration mileage" as 60000. The application was executed on Laurie Ambre's behalf by T.H. The identity of T.H. has not been established; similarly, whether T.H. was Ambre's agent has not been established.

Madden rather inartfully seeks to argue that Ambre could not have justifiably relied upon any alleged oral representations about the duration and timing of the ESP because the representations would have been contradicted by the terms of the ESP agreement. *See* Reply Mem., at 4–5. To consider properly this argument, substantially more information about Ambre's ESP application and a copy of the ESP agreement are needed.

Without a properly developed record, Madden's motion for summary judgment with respect to Ambre's first fraud claim is denied. To correct the fundamental cause of the underdeveloped record, this court *sua sponte* dismisses without prejudice Ambre's fraud claim relating to the duration of the extended service plan for failure to comply with the pleading requirements of Rule 9(b). If Ambre elects to proceed with this fraud claim, she shall have until April 21, 1995, to file a second amended complaint which sets forth *with particularity* the circumstances of her claim. Defendant Madden shall have until May 5, 1995, to answer or otherwise plead.

## B. Whether the Vehicle was New

■ There is no dispute that Madden represented to Ambre that the Explorer was "new" even though it had previously been driven 7050 miles as a demonstrator. Based upon the Odometer Disclosure Statement executed by Ambre, there is similarly no dispute that Ambre knew that the Explorer had been previously driven 7,050 miles when she purchased it. Ambre's dispute is not over whether she knew that the Explorer was a demonstrator but rather whether it was fraudulent for Madden to label and sell the Explorer as a "new" vehicle given its prior use as a demonstrator.

Under Illinois law, a plaintiff must prove the following elements to prevail in a cause of action for fraud:

(1) that the defendant made a statement; (2) of a material nature as opposed to opinion; (3) that was untrue; (4) that was known by the person making it to be untrue, believed by him to be untrue, or made in culpable ignorance of its truth or falsity; (5) that was relied upon the victim to his detriment; (6) made for the purpose of inducing reliance; and (7) such that the victim's reliance led to his injury.

*Buechin v. Ogden Chrysler–Plymouth, Inc.,* 159 Ill.App.3d 237, 247, 111 Ill.Dec. 35, 511 N.E.2d 1330, 1335–36 (2d Dist.1987); *accord L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561, 572 (7th Cir. 1993).

Madden initially argues that it properly designated and represented that the Explorer was a new vehicle because it had never been titled to any party other than Madden. The distinction between "new" and "used" vehicles is established in section 5/1–216 of the Illinois Vehicle Code, which states as follows:

Used motor vehicle. Every motor vehicle which has been sold, bargained, exchanged, given away, or title transferred from the person who first acquired it from the manufacturer or importer, dealer, or agent of the manufacturer or importer and so used as to have become what is commonly known as 'second hand' within the ordinary meaning thereof: *Provided, that a new motor vehicle shall not be considered as a 'used motor vehicle' until it had been placed in a bona fide consumer use, notwithstanding the number of transfers of such motor vehicle.* The term "bona fine consumer use" means actual operation by an owner who acquired the vehicle for

use in business or for pleasure purposes and who has been granted a Certificate of Title on such motor vehicle and has registered such motor vehicle, all in accordance with the laws of the residence of the motor vehicle.

625 ILCS 5/1–216 (West 1994) (emphasis added). Under a literal interpretation of this statute, Madden's characterization of the Explorer as "new" was correct. However, in determining whether a vehicle is new or used, Illinois courts do not interpret section 5/1–216 literally or otherwise rely on automobile trade practices. Rather, the courts have concluded that whether a vehicle may legally be designated as new or used is a question of fact to be decided by the jury based upon the particular circumstances of each case. *See Ciampi v. Ogden Chrysler Plymouth, Inc.,* 262 Ill.App.3d 94, 104, 199 Ill.Dec. 609, 617, 634 N.E.2d 448, 456 (2d Dist.1994) ("[w]hether a car is 'new' is an issue to be decided by the trier of fact under the circumstances of each case and not by a mechanical application of the motor vehicle laws") (citing *Maxcy v. Frontier Ford, Inc.,* 29 Ill.App.3d 867, 871, 331 N.E.2d 858, 861 (2d Dist.1975)).

The Illinois courts' refusal to apply the statute as drafted in accordance with the well established rules of statutory construction is bewildering and can only be viewed as result-driven jurisprudence. In the absence of a decision on this issue by the Illinois Supreme Court, this court respectfully declines to follow the rule adopted by the Illinois Appellate Courts in *Ciampi* and *Maxcy.*[5] Whether Madden could properly label and sell the Explorer as a "new" vehicle under section 5/1–216 of the Illinois Vehicle Code goes to the very heart of Ambre's fraud claim; namely, whether Madden knowingly made an untrue statement. The undisputed facts establish that prior to its sale to Ambre, the Explorer had not been placed in a "bona fide consumer use" within the meaning of that term as defined in section 5/1–216. Madden's representation that the Explorer was a "new" vehicle was a true and proper statement and thus cannot form the basis of a common law fraud claim.

■ Although Madden is entitled to judgment as a matter of law on this claim, its motion for summary judgment is denied for purely procedural reasons. Under Rule 54, a judgment must dispose of an entire claim. Accordingly, an order granting summary judgment must dispose of an entire claim as opposed to a single portion of the claim. *See Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir.1959). In this case, Ambre advanced three separate fraud claims in Count IV. Since it has not yet been resolved whether Madden may be held liable under Ambre's first theory of fraud, Ambre's fraud claims cannot presently be resolved in their entirety. Partial summary judgment is therefore not appropriate or availing. *See Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2737,* at 457 (1983); *In re Schraiber,* 141 B.R. 1000, 1004 (N.D.Ill.1992) ("partial summary judgment is only available to entirely dispose of one or more counts of the complaint"). Madden's motion for summary judgment is therefore denied; however, for all further purposes, including trial, the issue of whether Madden's representation that the Explorer was "new" was fraudulent has been decided as a matter of law in Madden's favor.

C. Manufacturer's Suggested Retail Price

■ Ambre's final fraud claim is that she was charged more for her Explorer with its 7050 miles than the manufacturer's suggested retail price for a new 1992 Explorer with zero miles. Regardless of whether or not the Moroney sticker was attached to the window, this claim is meritless because the facts establish that Ambre was not charged more than the MSRP. The invoice listed the MSRP for the Explorer new at $27,164.00 before discount. (Madden Mot. to Dismiss/Summ.J., Exh. A). Thompson used the

---

5. *See Robinson v. Ada S. McKinley Community Serv.,* 19 F.3d 359, 363 (7th Cir.1994) (where the Seventh Circuit held that it would not follow an Illinois Appellate Court's interpretation of state law if it was convinced that the Illinois Supreme Court would decide the issue differently); *Smith v. Navistar Internat'l Transp. Corp.,* 957 F.2d 1439, 1443 (7th Cir.1992) ("[f]ederal courts are not bound by the decisions of a lower state court unless the state's highest court in the jurisdiction whose law governs the diversity action has ruled on the matter").

MSRP of $27,164.00 as the starting point for his calculations of Ambre's purchase price. As detailed in his uncontested affidavit, Thompson deducted from the MSRP the actual value of Ambre's trade-in plus an additional discount of $4,359.00. The Buyer's Order establishes that Ambre' purchase price totalled $16,864.00, exclusive of tax and licensing fees. (Compl., Exh. A). Ambre's purchase price clearly was not greater than the manufacturer's retail price.

As such, Ambre's third fraud claim must fail as a matter of law. However, for the same procedural reason outlined in subsection B *supra*, Madden's motion for summary judgment is denied; however, for all further purposes, including trial, the issue of whether Madden fraudulently charged Ambre more than the manufacturer's suggested retail price has been decided as a matter of law in Madden's favor.

WHEREFORE, for the foregoing reasons, Joe Madden Ford's Motion to Dismiss or in the Alternative for Summary Judgment on Count IV of Plaintiff's Complaint has been considered by the court as a Motion for Summary Judgment. The Motion for Summary Judgment is denied. However, for all further purposes, including trial, the issues of whether Madden fraudulently represented the Explorer as "new" and whether Madden fraudulently charged plaintiff more than the manufacturer's suggested retail price have been decided as matters of law in Madden's favor and against plaintiff. Count IV's remaining fraud claim concerning the Extended Service Plan is *sua sponte* dismissed without prejudice due to plaintiff's failure to plead her claim with particularity as required by Federal Rule of Civil Procedure 9(b). Plaintiff shall have until April 21, 1995, to file a second amended complaint to correct this pleading deficiency. Defendant Madden shall have until May 5, 1995, to answer or otherwise plead to the second amended complaint. Finally, plaintiff's counsel shall submit the original of Ambre's affidavit for the court's inspection as detailed in subsection II.A *supra*.