MEMORANDUM OPINION AND ORDER
 

 BUCKLO, District Judge.
 

 On January 11,1996, plaintiff, Joslyn Manufacturing Company (“Joslyn”), filed its amended complaint against defendant, Liberty Mutual Insurance Company (“Liberty”). Liberty has provided comprehensive general liability coverage to Joslyn since 1945. Counts IV and V of the complaint arise out of a site in Bossier City, Louisiana (the “Louisiana Site” or “Site”) where Joslyn owned and operated a wood treatment plant from 1950 until 1969. In count IV, Joslyn seeks an award of damages for its past costs as well as a declaration that Liberty is to defend and indemnify it in the future in connection with a United States Environmental Protection Agency (“EPA”) Claim
 
 [1]
 
 addressing the Louisiana Site. In count V, Joslyn requests a declaration that Liberty is obligated to indemnify it against claims made in
 
 Henry L. Johnson, et al. v. Lincoln Creosote Co., Inc., et al.,
 
 Number 70481, 26th Judicial District Court, Bossier Parish, Louisiana (the “Johnson Lawsuit”), which alleges injury from the Louisiana Site. Joslyn has filed a motion for partial summary judgment on counts TV and V, and Liberty has filed a cross motion for summary judgment on these counts.
 

 I.
 
 Background
 

 The following facts are undisputed. Under the pertinent insurance policies, Joslyn was to give Liberty “immediate” notice of a “claim.” The policies also required Joslyn to notify Liberty “as soon as practicable” of an “occurrence:”
 

 In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
 

 The policies defined “occurrence” as “an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.”
 
 [2]
 
 The “Conditions” section of
 
 *606
 
 the policies further provided: “ACTION AGAINST COMPANY No action shall he against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy----”
 

 On August 2, 1986, the Louisiana Department of Environmental Quality (“DEQ”) ordered Joslyn (and other entities) to investigate and clean up contamination on the Louisiana Site (the “DEQ Order”). In 1990, Joslyn brought suit against Liberty in the United States District Court for the Western District of Louisiana seeking a declaration that Liberty was obligated to defend and indemnify Joslyn against the DEQ action. Liberty defended this lawsuit by arguing
 
 inter alia
 
 that Joslyn was not entitled to coverage because it “expected or intended” its operations at the Louisiana Site to cause damage to the environment. Following a trial, a jury decided that Joslyn did not expect or intend to contaminate the environment. In a post-trial motion, Liberty argued that in spite of the jury’s verdict it had no coverage obligations because-Joslyn faded to timely notify it of the DEQ’s claim. In
 
 Joslyn Manufacturing Company v. Liberty Mutual Insurance Company,
 
 836 F.Supp. 1273, 1277 (W.D.La.1993)
 
 (“Joslyn I”),
 
 the district court agreed, finding that Joslyn knew of a claim by the DEQ when it received the DEQ Order but waited until May 19, 1987, over nine months, before notifying Liberty of the claim. The court held that Joslyn’s notice to Liberty was not “immediate,” as required by the insurance contracts, and therefore, Liberty owed no insurance coverage to Joslyn for the DEQ claim.
 
 Id.
 
 at 1277. The Fifth Circuit affirmed the district court’s ruling.
 
 Joslyn Manufacturing Company v. Liberty Mutual Insurance Company,
 
 30 F.3d 630, 635 (5th Cir.1994)
 
 (“Joslyn II”), cert. denied,
 
 — U.S. -, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995). -
 

 In March, 1987, neighbors of the Louisiana Site filed the Johnson Lawsuit against Joslyn and others in which they alleged that they suffered personal injuries and property damage as a result of chemicals emanating from the Site. Joslyn notified Liberty of this suit on April 10, 1987. Liberty responded by letter, dated February 26,1992, that it would defend Joslyn but reserved its right to contest its obligation to indemnify Joslyn. The Johnson Lawsuit has been certified as a class action and is still pending.
 

 In January, 1994, the EPA proposed that the Site be included on the National Priorities List. Joslyn notified Liberty of the EPA’s action on January 20, 1994. On April 26, 1994, Joslyn demanded defense and indemnity with respect to the EPA Claim. In a letter, dated May 26,1994, Liberty declined to defend or indemnify Joslyn and “reserve[d] all rights under applicable law and policies issued to Joslyn Corporation.”.
 
 [3]
 
 In September, 1994, the EPA notified Joslyn that it may be a potentially responsible party with respect to the release of hazardous substances at the Louisiana Site. Joslyn subsequently negotiated a consent decree with the EPA pursuant to which it will remove contaminated soil from the residential area adjacent to the wood treatment plant and reimburse the EPA $71,000.
 

 In its motion for partial summary judgment, Joslyn requests a ruling barring Liberty from relitigating whether Joslyn expected or intended its operations at the Louisiana Site to contaminate the environment. Liberty’s cross-motion asks for summary judgment on Joslyn’s claims in counts IV and V on the ground that Joslyn failed to comply with the notice provisions in the insurance policies. Liberty also requests rulings precluding Joslyn from relitigating the issues of what law governs the policies and whether Liberty owes Joslyn coverage under pre1962 policies. For the reasons discussed below, Joslyn’s request in its motion is granted, and Liberty’s motion is denied.
 

 
 *607
 
 II.
 
 The Notice Requirements
 

 Liberty argues that it is entitled to summary judgment on counts IV and V of Joslyn’s complaint on the basis, that Joslyn did not comply with the insurance policies’ notice provisions. In
 
 Joslyn II,
 
 30 F.3d at 635, the Fifth Circuit held: “[A] claim was made, at the latest, when Joslyn received the August 2, 1986 DEQ Order. Timely notice was then due Liberty.” Consequently, Liberty contends that as of August 2,1986, Joslyn knew of an “occurrence” and was therefore required to notify Liberty “as soon as practicable.” Liberty further contends that the fact that Joslyn waited until May, 1987 to give Liberty notice of the DEQ Order indicates that Joslyn did not notify Liberty as soon as practicable; and therefore, Liberty is not obligated to provide the coverage Joslyn seeks in counts IV and V.
 

 Under Louisiana law,
 
 [4]
 

 where prompt notice of a covered occurrence is a “condition precedent” to recovery under an insurance policy, and the insured fails to give such notice, the claim is no longer covered by the policy, regardless of whether the insurer can demonstrate prejudice.
 

 Joslyn II,
 
 30 F.3d at 633. Joslyn was obligated to give timely notice of an occurrence to Liberty as an express condition precedent to coverage.
 
 [5]
 

 Generally, an insured is expected to give notice when it knows or should have known of an occurrence that is likely to give rise to a claim under its insurance policies.
 
 See, e.g., Ogden Corporation v. Travelers Indemnity Company,
 
 924 F.2d 39, 43 (2d Cir. 1991);
 
 In re Texas Eastern Transmission Corporation PCB Contamination Insurance Coverage Litigation,
 
 870 F.Supp. 1293, 1357 (E.D.Pa.1992),
 
 affd on other grounds,
 
 15 F.3d 1249 (3rd Cir.),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994).
 
 [6]
 
 Joslyn does not contest that the August 2, 1986 DEQ Order constitutes a claim. It also does not contest that once it received the DEQ Order, it knew that there was contamination on the Louisiana Site. Thus on August 2, 1986, Joslyn knew of an occurrence from which at least one claim had arisen. At that point, therefore, Joslyn had the obligation to notify Liberty of an occurrence.
 

 Joslyn attempts to shield itself from the notice provision by arguing that the EPA Claim and the Johnson Lawsuit arise out of incidents of
 
 off-site
 
 contamination, which constitute a separate occurrence from the on-site contamination that resulted in the DEQ Order.
 
 [7]
 
 It contends that in August, 1986, it was unaware of off-site contamination. Although giving rise to separate claims, both the on-site and off-site damage stem from the same occurrence,
 
 i.e.,
 
 the environmental contamination from Joslyn’s operations at the Louisiana Site. As of August 2, 1986, therefore, Joslyn knew of an occurrence that produced the DEQ Order, the EPA Claim, and the Johnson Lawsuit of which it was obligated to notify Liberty.
 

 Furthermore, when Joslyn received the DEQ Order in August, 1986, it had reason to know that the on-site contamination could
 
 *608
 
 give rise to a claim for off-site contamination. The DEQ Order incorporated by reference a report, dated October 15, 1985, prepared by the DEQ’s contractor, C-K Associates (the “C-K Report”):
 

 
 *607
 
 The land owner plaintiffs have breathed the toxic fumes from the waste site. Some of the plaintiffs came in contact with these chemicals when they were walking or playing on the site. Moreover, game animals and marine life on or about the waste site have been contaminated by the toxic chemicals, posing a health hazard to persons who have hunted and eaten such animals and marine life.
 

 
 *608
 
 Based on the information presented in the [C-K Report], the [DEQ] is of the opinion that the hazardous substances discharge or disposal at [the Site] may present an imminent and substantial endangerment to the health of those persons who may inadvertently come into contact with such substances.
 

 The C-K Report stated:
 

 “Pursuant to field observations and analytical testing, the [S]ite ... has been proven to contain unprotected high concentrations of hazardous substances which pose high-potential risk to the local public health and environment. The [S]ite, as of the date of this report, is totally exposed to contact by local citizens who frequently traverse the contaminated areas. In addition, the [S]ite poses a potential threat as a contaminant source to groundwater as well as surface water in the immediate area of the [Site].”
 

 It is undisputed that the C-K Report found an extremely high probability of groundwater contamination. Moreover, the C-K Report identifies several drainage ditches on the Site, which drained liquid waste from the Site into off-site areas. Joslyn does not dispute that it dug ditches for liquid to run off its property and onto other people’s property. Joslyn also does not dispute that treatment chemicals were released into the environment each year it operated the plant at the Louisiana Site. Therefore, when Joslyn received the DEQ Order, it should have known that its operations on the Site made possible off-site contamination as well as future claims relating to such contamination.
 

 Thus the August 2, 1986 DEQ Order triggered Joslyn’s duty to give Liberty notice of the occurrence that was the basis for the EPA claim and the Johnson Lawsuit.
 
 [8]
 
 It is undisputed that Joslyn notified Liberty of the Johnson Lawsuit on April 10, 1987 and the DEQ Order on May 19, 1987. It is unlikely that by waiting more than eight months to inform Liberty of the occurrence, Joslyn fulfilled its obligation to notify Liberty “as soon as practicable.”
 
 See National Surety Corporation v. L.E. Wells,
 
 287 F.2d 102, 105-06 (5th Cir.1961) (stating that insurance policy provision requiring notice of occurrence as soon as practicable requires “transmission within a reasonable time considering all the circumstances”). In light of my conclusion in the following section, it is unnecessary to determine whether Joslyn actually did so.
 

 III.
 
 Waiver
 

 Joslyn argues that even if it did not satisfy the notice requirements in the policies, Liberty is not relieved from its coverage obligations because it waived its right to assert the notice provisions as a defense.
 
 [9]
 
 The Supreme Court of Louisiana has stated:
 

 Waiver is generally understood to be the intentional relinquishment of a known right, power, or privilege____ Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.... A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered.
 

 Steptore v. Masco Construction Co., Inc.,
 
 643 So.2d 1213, 1216 (La.1994) (citations omitted). Joslyn, as “the party who demands performance,” bears the burden of proving waiver.
 
 Tate, M.D. v. Charles Aguillard Insurance & Real Estate,
 
 508 So.2d 1371, 1375 (La.1987).
 

 [A]n insurer is charged with knowledge of the contents of its own policy ... In addition, notice of facts which would cause a reasonable person to inquire further im
 
 *609
 
 poses a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.
 

 Steptore,
 
 643 So.2d at 1216.
 

 If a policy requires an insurer to defend a claim, then the insurer must do so, even if it ultimately may not be liable under the policy.
 
 Peavey Company v. M/V ANPA,
 
 971 F.2d 1168, 1175 (5th Cir.1992). An insurer can supply its insured with a defense and simultaneously contest its obligation to provide coverage by reserving its right to refuse coverage in a timely manner.
 
 Id.
 
 An insurer that tardily reserves its rights waives defenses to coverage.
 
 Id.
 
 at 1175-76 (holding that insurer that waited five months after being informed of occurrence and two months after being informed of suit against insured to deliver reservation of rights letter waived its noncoverage defense).
 

 a.
 
 The Johnson Lawsuit
 

 It is undisputed that Joslyn informed Liberty of the Johnson Lawsuit on April 10, 1987 and the DEQ Order on May 19, 1987. It is also undisputed that in a letter, dated February 26,1992, Liberty told Joslyn that it agreed to defend it in the Johnson Lawsuit but reserved its rights as to coverage. Joslyn contends that by waiting until February, 1992 to reserve its rights, Liberty waived its notice provision defense to liability under the policy.
 

 Liberty knew of the Johnson Lawsuit by April, 1987 and the DEQ order by May, 1987. There is undisputed evidence that soon thereafter, a Liberty representative contacted Joslyn’s attorney, William J. Rotenberry, to request information about the Site. In a letter, dated February 2, 1988, Mr. Rotenberry enclosed a copy of the Environmental Investigation performed at the Site “as well as other documents which indicate activity through the current date.” Liberty’s communication with Joslyn’s attorney after it had notice of both the occurrence and suit gave rise to an obligation to issue a reservation of rights letter within a reasonable amount of time.
 
 See Peavey,
 
 971 F.2d at 1175 (holding that insurer, who, after being told of occurrence, contacted insured’s attorney for information, “should have issued reservation of rights letter within a reasonable time after ... it was informed of the occurrence”);
 
 V/O Exportkhleb v. M/V ANPA
 
 773 F.Supp. 832, 835 (E.D.La.1991) (in district court case in
 
 Peavey,
 
 noting that before suit was filed against insured, insurer asked for and received information from insured’s attorney).
 

 In addition, as Liberty concedes, the duty to defend in Louisiana is broad. “Only if the allegations in the plaintiffs complaint [against the insured] unambiguously and absolutely exclude coverage is the insurer relieved of the duty to defend its insured____”
 
 Colomb v. United States Fidelity and Guaranty Company,
 
 539 So.2d 940, 943 (La.App. 1989). Furthermore,
 

 [i]n determining the duty of defend, the plaintiffs complaint against the insured is examined with the assumption that all the allegations are true. The plaintiffs allegations are liberally construed in deciding whether they set forth grounds that could possibly bring the claim within the scope of the insurer’s duty to defend ... If upon such an examination there appears to be a potential coverage under the policy and liability to plaintiff, the insurer is obligated to defend, regardless of the ultimate outcome of the case.
 

 Id.
 
 (citations omitted). The parties have furnished me with the complaint in the Johnson Lawsuit as well as the applicable insurance policies. The allegations in the Johnson complaint do not “unambiguously and absolutely exclude coverage.” Consequently, Liberty could not in good faith have declined to defend Joslyn.
 
 [10]
 
 Liberty concedes that it ultimately agreed to defend Joslyn in the Johnson Lawsuit because “no late notice defense was available to it based on the allegations of the Joslyn complaint.” Liberty Reply at 3-4. Moreover, there is undisputed
 
 *610
 
 evidence that by August 18, 1988, a Liberty claims representative, Dave Trytek, completed an investigation of the Site in which he concluded that Liberty owed Joslyn a defense for the Johnson Lawsuit.
 

 Thus, at least by August, 1988, Liberty had the knowledge and completed the research necessary to require that it give Joslyn timely notice of its intent to reserve its rights.
 
 See Peavey,
 
 971 F.2d at 1176. Liberty’s failure to provide a reservation of rights letter to Joslyn until more than four years after it knew of the Johnson Lawsuit and at least three and one-half years after it knew that it had the duty to defend Joslyn from that suit constitutes “conduct so inconsistent with the intent to enforce the right [ (in this case, to assert a coverage defense) ] as to induce a reasonable belief that it has been relinquished.”
 
 Steptore,
 
 643 So.2d at 1216. Furthermore, if Liberty did not know by August, 1988 that it had a defense to its coverage obligations, then its ignorance was due to a lack of investigation, which results in its relinquishing such defense.
 
 See id.
 
 Accordingly, Liberty’s delay in reserving its rights waived any coverage defenses it may have had with regard to the Johnson Lawsuit.
 
 [11]
 

 b.
 
 The EPA Claim
 

 Joslyn also contends that Liberty waived its right to assert its notice provision defense to Joslyn’s cause of action based on the EPA Claim. In response, Liberty maintains that it cannot have waived its defense because although it knew of the Johnson Lawsuit and the DEQ Order in spring, 1987, it did not know oí the EPA Claim until January 20, 1994. Joslyn demanded that Liberty defend and indemnify it only on April 26, 1994; and Liberty quickly answered by letter, dated May 26, 1994, in which it reserved its rights. Contrary to Liberty’s contention, these facts do not require a ruling in its favor.
 

 Under Louisiana law, the duty of an insurer to reserve its rights can arise once the insurer is notified of an occurrence even if the insurer does not yet know of a suit.
 
 See Peavey,
 
 971 F.2d at 1175-76;
 
 Abramson v. Florida Gas Transmission Co.,
 
 908 F.Supp. 1383, 1388 (E.D.La.1995). Liberty has argued in its motion that the DEQ Order gave rise to Joslyn’s duty to notify it of the occurrence that is the basis for the EPA Claim. I have agreed with Liberty.
 
 See supra.
 
 Joslyn informed Liberty of the occurrence by May 19, 1987. Additionally, Liberty possessed the C-K Report at least by August 18, 1988: on that day, Mr. Trytek, the Liberty claims examiner, wrote his memo addressing the Louisiana Site and mentioned this report. Thus certainly by August, 1988, if not sooner, Liberty “knew of facts that [should] have given it notice to review its policy as to any coverage defenses and to provide a reservation of rights letter” to Joslyn within a reasonable time.
 
 See Abramson,
 
 908 F.Supp. at 1388. Liberty’s delay until May, 1994 to reserve its rights was not reasonable. Accordingly, Liberty waived its coverage defenses to the EPA Claim.
 

 IV.
 
 The Remaining Contentions
 

 Joslyn’s motion for partial summary judgment seeks a finding that Liberty is barred from relitigating whether Joslyn expected or intended its operations at the Louisiana Site to contaminate the environment. The remainder of Liberty’s motion for summary judgment asks that I find that Joslyn may not relitigate its claim for coverage under the pre-1962 policies. The findings that the parties request could not dispose of an entire claim. A party cannot obtain summary judgment on a portion of a claim.
 
 Ambre v. Joe Madden Ford,
 
 881 F.Supp. 1187, 1193 (N.D.Ill.1995). “Partial summary judgment is therefore not appropriate or availing.”
 
 Id.
 
 Even though I am not able to grant partial summary judgment on the issues that Liberty and Joslyn raise, I will treat their motions as motions
 
 in limine
 
 and rule on the issues as a matter of law.
 

 In its motion for partial summary judgment, Joslyn requests that I find under col
 
 *611
 
 lateral estoppel principles that the jury’s verdict that Joslyn did not expect or intend its operations at the Louisiana Site to contaminate the environment,
 
 see supra
 
 at p. 606, prevents Liberty from defending this lawsuit on the grounds that Joslyn did expect or intend such contamination. Liberty does not dispute this request.
 

 Liberty argues that collateral estoppel principles preclude Joslyn from litigating whether Liberty owes it coverage under pre1962 policies. The parties agree that Liberty has insured Joslyn since 1945, but that the pre-1962 policies are lost. In support of its argument, Liberty points to the district court’s determination in
 
 Joslyn I,
 
 836 F.Supp. at 1276, that “Joslyn has introduced no evidence of the terms and provisions of the pre-1962 policies.” Joslyn agrees that the parties should not litigate the issue of coverage under the pre-1962 policies. It, however, contends that
 
 Joslyn Manufacturing Company v. Liberty Mutual Insurance Company,
 
 23 F.3d 1212, 1214 (7th Cir.1994)
 
 (“Joslyn III”),
 
 estops Liberty from taking the position that it is not obligated to provide Joslyn coverage under those policies. In
 
 Joslyn III,
 
 23 F.3d at 1214, the Seventh Circuit found that “Joslyn introduced evidence of coverage and policy limits for 1952 through 1961 and Liberty failed to show that no coverage existed in those years.” Consequently, the court affirmed the district court’s decision that “there was sufficient evidence of coverage prior to 1962.”
 
 Id.
 

 The difference in the outcomes of
 
 Joslyn I
 
 and
 
 Joslyn III
 
 is apparently attributable to the fact that the
 
 Joslyn I
 
 court struck the affidavit of Joslyn’s risk manager from 1947 through 1983 on which the
 
 Joslyn III
 
 court relied for its holding. Thus both court’s holdings are essentially rulings on the admissibility of evidence. In any case, the doctrine of collateral estoppel does not apply when the determination relied on as preclusive is inconsistent with another determination of the same issue. Restatement (Second) of Judgments § 29(4) (1982).
 
 See also Hudson v. Allstate Insurance Company,
 
 No. 93 C 7488, 1995 WL 642778, *4 n. 8 (Oct. 27, 1995);
 
 Robertson v. Yamaha Motor Corporation, U.S.A,
 
 143 F.R.D. 194, 199 (N.D.Ind. 1992). Both parties’ requests that I find as a matter of law that they may not relitigate the issue of coverage before 1962 are, accordingly, denied.
 

 V.
 
 Conclusion
 

 For the foregoing reasons, Liberty’s motion for summary judgment is denied. Joslyn’s request that I rule as a matter of law that Liberty is collaterally estopped from relitigating whether Joslyn expected or intended its plant to damage the environment is granted. Each parties’ request that I find as a matter of law that they may not relitigate the issue of coverage before 1962 is denied.
 

 [1]
 

 . Because the parties describe the EPA’s action at the Louisiana Site as the "EPA Claim," I will as well.
 

 [2]
 

 . Joslyn points out that the terms of the 1966 policy slightly differed:
 

 NOTICE OF [OCCURRENCE] When an [occurrence] occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place, and circumstances of the accident, the names and addresses of the injured and of available witnesses.
 

 "Occurrence” means either an accident or a continuous or repeated exposure to conditions
 
 *606
 
 which result during the policy period in injury to persons or real or tangible property which is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
 

 [3]
 

 . Liberty has since agreed to defend Joslyn from the EPA Claim.
 

 [4]
 

 . Joslyn and Liberty agree that I should apply Louisiana law in resolving the present motions because the choice of law issue was adjudicated in the earlier Joslyn litigation.
 

 [5]
 

 . Joslyn apparently agrees that under
 
 Joslyn II,
 
 Liberty is not required to demonstrate prejudice in order to assert a defense of untimely notice. Joslyn argues, however, that the Fifth Circuit's ruling in
 
 Joslyn II
 
 is contrary to Louisiana law, which it claims requires Liberty to show prejudice. In light of my conclusion,
 
 see infra,
 
 it is not necessary for me to decide this issue.
 

 [6]
 

 . The parties have not cited case authority setting forth the test under Louisiana law for determining whether an insured must give notice of an occurrence to its insurer. In any case, “[t]he law of insurance is the same in Louisiana as in other states.”
 
 Joslyn I,
 
 836 F.Supp. at 1278 (quoting
 
 Calcasieu-Marine National Bank of Lake Charles v. American Employer’s Insurance Co.,
 
 533 F.2d 290, 295 (5th Cir.),
 
 cert. denied,
 
 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976)).
 

 [7]
 

 . Notably, however, the complaint in the Johnson Lawsuit alleges
 
 inter alia:
 

 [8]
 

 . Joslyn argues that the jury verdict that Joslyn did not expect or intend that its operations at the Site would hatm the environment has bearing on this issue. It does not. That verdict addressed what Joslyn knew when it operated its plant from 1950-69. The issue here is what Joslyn knew in August, 1986.
 

 [9]
 

 . Liberty does not contend in response that the
 
 Joslyn I
 
 and
 
 Joslyn II
 
 courts resolved this issue.
 

 [10]
 

 . It appears that Joslyn believed that Liberty was resisting defending it in the Johnson Lawsuit. In October, 1991, Joslyn amended its complaint in the action it filed against Liberty with regard to the DEQ Order to add a count seeking coverage for the Johnson Lawsuit. Liberty’s February 26, 1992 letter apparently mooted the issue.
 

 [11]
 

 . Liberty's argument that it raised late notice as an affirmative defense in its answer to Joslyn’s October, 1991 amended complaint does not assist it. That Liberty may have notified Joslyn of its defense subsequent to October, 1991 is not a reasonable time after it knew of the Johnson Lawsuit, the occurrence, and its duty to defend.